**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| WILLIAM TOM BRADFORD § | |
| § | |
| V. § | |
| § | CAUSE NO. 6:06-CV-477 |
| ROBERT PELTIER NISSAN PONTIAC, § | |
| PELTIER CHEVROLET PONTIAC, INC., § | |
| PELTIER ENTERPRISES, INC., § | |
| PELTIER MANAGEMENT, LLC, § | |
| DON WILSON, AND § | |
| DEAN CAGLE § | |

**ORDER ON DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND TO DISMISS THIS PROCEEDING**

Came on for consideration this day Defendants' Motion to Compel Arbitration and to Dismiss this Proceeding (Doc. No. 11). Based on careful consideration of the Defendants' motion, the Plaintiff's response, and the replies, the court finds that the Defendants' motion should be granted in part and denied in part.

**BACKGROUND**

This case arises out of the purchase of a 2004 Chevrolet pickup truck by Plaintiff Bradford from the Defendants. Plaintiff alleges that Defendant Robert Peltier Nissan Pontiac, by and through the co-Defendants (collectively "Peltier"), sold the truck to the Plaintiff for a retail price of approximately $40,012.00. Bradford alleges that, at the time of the purchase, Peltier represented that the truck was a "demo" driven by the manager, but failed to disclose that the truck was a Lemmon Law "buy back" which had been previously

sold and reacquired under the Texas Lemon Law for inoperative steering. Plaintiff alleges that the Defendants intentionally deceived him into purchasing a Lemon Law buy-back, and that the Defendants forged Plaintiff's signature on the legally required disclosure forms to conceal their act of fraud. Based upon these allegations, Bradford alleges causes of action for violations of the Texas Deceptive Trade Practices Act, fraud, negligence, negligent hiring and supervision, and for a declaratory judgment that an alleged arbitration agreement between the parties is unenforceable. Plaintiff also alleges that Defendant made an audio and video recording of Bradford's private cellular phone conversations while Bradford was in Peltier's finance office. Bradford alleges that this recording was made without Bradford's prior knowledge and consent and constitutes an actionable civil violation of the Federal Wiretap Act.

Plaintiff admits that he signed a Purchase Agreement and purchase order at the time he purchased the pickup truck from Peltier. The purchase order contains the following arbitration provision:

> Any controversy, dispute or claim arising out of or related to this agreement and/or the breach of this agreement, including, but not limited to, claims under the Texas Deceptive Trade Practices Act . . . shall be settled by arbitration pursuant to the Federal Arbitration Act. . . . Any and al arbitrations shall be conducted and settled in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . .

(Mot. to Compel, Ex. A at 2.) The purchase order further provides that "THIS ORDER NOT VALID UNTIL SIGNED BY SELLER." It is undisputed that the purchase order is not signed by Defendants or their representatives.

Defendants seek to compel arbitration on the grounds that the parties' have a valid agreement to arbitrate all disputes arising out of the sale of the truck. Plaintiff argues that the arbitration agreement is invalid and unenforceable, and in the alternative, argues that the Federal Wiretap Act claim is not subject to arbitration.

## ANALYSIS

In considering a motion to compel arbitration under the Federal Arbitration Act, courts employ a two step inquiry. First, the court should determine whether the parties agreed to arbitrate the dispute in question. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Step one involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 258. The second step is to determine "'whether legal constraints external to the parties' agreement foreclose[es] the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628). The parties in this case dispute whether there is a valid arbitration agreement, and if there is, whether Plaintiff's Federal Wiretap Act claim falls within the scope of the agreement.

### 1.     Whether There is a Valid Agreement to Arbitrate

When determining the validity of an arbitration agreement, the intention of the parties controls. *McKee v. Home Buyers Warranty Corp.*, 45 F.3d 981, 984 (5th Cir. 1995) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626). In determining whether the parties agreed to arbitrate the dispute in question, courts "'should apply ordinary state-law principles that govern the formation of contracts.'" *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)).

Plaintiff admits that he signed the purchase order containing the arbitration clause. Plaintiff argues, however, that the parties never formed an agreement to arbitrate any dispute because the purchase order, which expressly requires the signature of the *seller* to be valid, was no signed by a Peltier representative. Plaintiff cites *In re Bunzl USA, Inc.* for the proposition the parties did not intend to be bound by an agreement where the document required the signatures of the parties to be valid and where the signature block was left blank. 155 S.W.3d 202 (Tex. App.—El Paso 2004, pet. denied).

Defendants admit that a Peltier representative failed to sign the purchase order. Defendants also admit that the purchase order expressly requires the signature of the seller to be valid. Nonetheless, Defendants note that *Bradford* did sign the purchase order, and argue that Peltier accepted the terms of the purchase order and the arbitration provision by following through with the sale of the pickup truck. Defendants argue that Plaintiff's signature and the Defendants' performance of the contract indicate that both parties intended

to be bound by the terms of the purchase order and that a Peltier representative's signature is not necessary to have an enforceable contract.

Ordinarily, where an offer prescribes the time and manner of acceptance, those terms must be complied with to create a binding contract. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (citing *Town of Linsay v. Cooke County Elec. Cooperative Ass'n*, 502 S.W.2d 117, 118 (Tex. 1973), *cert. denied*, 416 U.S. 970 (1974)). A different method of acceptance may be effectual, however, "where the 'original offeror thereafter manifests his assent to the other party.'" *Id*. (quoting *Town of Lindsay*, 502 S.W.2d at 118). In *Padilla*, the offeror's offer specified that the offer could only be accepted by payment of money by a specific deadline. *Id*. The offeree responded with a faxed letter confirming a "settlement agreement" between the parties, but noting uncertainty as to a detail of payment. The offeror responded with a letter stating that the matter "has been settled." The Texas Supreme Court found that the offeror's response indicated that the offeror had assented to an alteration in the mode of acceptance and that a valid agreement had been reached despite the fact that acceptance was not in the form required by the original offer.

In this case, though Peltier did not sign the purchase order, Peltier did signify its acceptance of the terms of the contract by releasing title to the pickup truck in exchange for payment by Bradford. Bradford, by accepting the truck under the terms of the signed purchase order, assented to Peltier's alternative mode of acceptance—i.e., the sale of the truck in accordance with the terms of the contract.

Similarly, the court in *In re Bunzl* recognized that, in some cases, a party may manifest assent to an arbitration agreement in a contract by performing under the terms of the contract, even when the contract was not executed in strict compliance with the terms of execution. *In re Bunzl USA, Inc.*, 155 S.W.3d at 211 n.4 (citing *Stinson v. America's Home Place, Inc.*, 108 F. Supp. 2d 1278 (M.D. Ala. 2000); *In re Halliburton Co.* 80 S.W.3d 566 (Tex. 2002), *cert. denied*, 537 U.S. 1112 (2003)). Here, in spite of the absence of a signature, Bradford *and* Peltier manifested their assent to the arbitration clause by performing under the terms of the contract in a manner that demonstrated that each party considered itself bound by the terms of the contract. The court finds that there is a valid agreement to arbitrate between Bradford and Peltier.[1]

**2.      Arbitration Appropriate under the Doctrine of Equitable Estoppel**

In addition to their being a valid agreement to arbitrate, arbitration is also appropriate under the doctrine of equitable estoppel. It has been held that a non-signatory to a written arbitration agreement may compel arbitration in accordance with the terms of the agreement when a person who has agreed to arbitrate disputes arising out of a contract is suing in reliance on that contract. *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). Here

---

[1] Bradford also argues that the agreement to arbitrate is invalid because the purchase order is illusory because there is no consideration for the agreement to arbitrate. In addition, Bradford argues that the arbitration agreement is unconscionable because Peltier, by not signing the purchase order, has unilaterally reserved the right to compel arbitration at its own insistence while Bradford is without a similar right. This argument fails, however, because, first, the sale of the pickup truck constitutes consideration for the agreement. Second, as has been discussed, there is a an agreement to arbitrate that was entered into by both parties and which is enforceable by and against *both* Bradford *and* Peltier.

the parties entered into an agreement for the sale/purchase of a pickup truck. Bradford signified his agreement to the terms of an arbitration clause contained in the purchase order by signing the purchase order. Even though Peltier did not sign the purchase order, it agreed to its terms by performing under the contract. Bradford now brings suit in reliance upon the contract. Accordingly, because Bradford must rely on the terms of the written agreement to assert his claims against Peltier, and Bradford is bound by the doctrine of equitable estoppel to arbitrate the dispute in accordance with the terms to which he gave his assent. *Id*. at 467.

### 3. Scope of the Arbitration Agreement

Having determined that there is a valid agreement to arbitrate, the court must next determine whether the dispute in question falls within the scope of the arbitration agreement. *Webb*, 89 F.3d at 258. The parties' arbitration agreement provides that "[a]ny controversy, dispute or claim arising out of or related to this agreement and/or the breach of this agreement, including, but not limited to, claims under the Texas Deceptive Trade Practices Act." The parties agree that all of Bradford's state-law claims are within the scope of the arbitration clause. Bradford argues, however, that his Federal Wiretap Act claim may be maintained without reference to the contract and is not subject to arbitration.

In determining whether a claim falls within the scope of an arbitration clause, courts must focus on the factual allegations of the complaint rather than the legal causes of action asserted. *Prudential Sec. Inc., v. Marshall*, 909 S.W.2d 896, 900 (Tex. 1995). That is, a cause of action that is grounded on a legal theory distinct from a contract claim will still be

subject to arbitration if the claim is "factually intertwined" with the facts establishing the contract claims. *See Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). Nevertheless, if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim can be maintained without reference to the contract, the claim is not subject to arbitration. *Penzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.).

The Federal Wiretap Act prohibits any person from intentionally intercepting or endeavoring to intercept any wire, oral, or other electronic communication and/or using a device described above to intercept or endeavor to intercept such a communication. 18 U.S.C. § 2511(1)(a) and (b). In order to establish a civil claim under the Federal Wiretapping Act, a plaintiff must prove that (1) his calls were intercepted, (2) he had an expectation that his communications were not subject to interception, and (3) that his expectations were justified under the circumstances. *See Cross v. Alabama Dept. Of Mental Health & Mental Retardation*, 49 F.3d 1490, 1508–09 (11th Cir. 1995).

In this case, though the alleged illegal wiretapping occurred while Bradford was negotiating the terms of the contract that contains the arbitration clause, the facts that relate to the wiretapping claim are not intertwined with those of Bradford's contract claims, may be maintained without reference to the contract, and therefore are not within the scope of the arbitration agreement.

**CONCLUSION**

For the foregoing reasons, the Court finds that there is a valid arbitration agreement and that Plaintiff Bradford's claims for violations of the Texas Deceptive Trade Practices Act, fraud, negligence, and negligent hiring and supervision are subject to the arbitration agreement and that the Defendants' motion to compel arbitration should be **GRANTED** as to those claims. Plaintiff Bradford's claim for civil violation of the Federal Wiretap Act, however, is not within the scope of arbitration agreement and the Defendants' motion to compel is **DENIED** as to that claim. It is therefore

**ORDERED** that Plaintiff's claim for declaratory judgment is **DISMISSED**. It is further

**ORDERED** that all of Plaintiff's claims, with the exception of Plaintiff's claim under the Federal Wiretap Act, shall be submitted to arbitration in accordance with the parties' agreement, and the same are **DISMISSED** from this case.

**It is SO ORDERED.**

**SIGNED this 15th day of March, 2007.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE